
### NO. 2-07-005-CV

WENDY COLLINI, M.D.                                                          APPELLANT

V.

MARTHA PUSTEJOVSKY                                                          APPELLEE

------------

### FROM THE 48TH DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION ON REMAND

------------

Appellant Wendy Collini, M.D. appeals the trial court's denial of her motion to dismiss the health care liability claim of appellee Martha Pustejovsky. We originally dismissed this interlocutory appeal for want of jurisdiction. *Collini v. Pustejovsky*, 253 S.W.3d 292, 294 (Tex. App.—Fort Worth 2007), *rev'd*, 253 S.W.3d 216 (Tex. 2008). Because the Texas Supreme Court has held that we have jurisdiction, we now consider the appeal on the merits. *Collini*, 253 S.W.3d at 216. In one issue, appellant contends that the trial court abused its discretion in denying her motion to dismiss by concluding that the expert report served upon her satisfied the

requirements of the civil practice and remedies code.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (Vernon Supp. 2008).  We reverse and remand.

## Background Facts

In June 2006, Martha Pustejovsky asserted a health care liability claim against Wendy Collini, M.D.  Her original petition alleged that in 2002, another doctor prescribed Reglan to her and that Dr. Collini continued this prescription for three years.  Pustejovsky claimed that the prolonged prescription and use of Reglan caused her to develop tardive dyskinesia.[1]  She asserted that Dr. Collini was negligent and grossly negligent because Dr. Collini failed to inform her of the known dangers associated with Reglan and failed to adequately monitor the proper prescription of the drug and her condition while using it.  Pustejovsky's petition sought actual and punitive damages related to her alleged physical pain, suffering, and impairment along with further damages for mental anguish.  In July 2006, Dr. Collini filed her original answer, generally denying Pustejovsky's allegations.

In September 2006, in accordance with section 74.351, Pustejovsky served on Dr. Collini an expert report prepared by Paul Haberer, D.O.  Dr. Haberer's report indicates that he is a practicing physician, that he has been licensed in Texas since

---

[1] ... Tardive dyskinesia is a condition that causes involuntary movement of the limbs, face, or tongue.  *See State ex rel. F.H.*, 214 S.W.3d 780, 781 n.1 (Tex. App.—Tyler 2007, no pet.); *In re C.S.*, 208 S.W.3d 77, 79 n.7 (Tex. App.—Fort Worth 2006, pet. denied).  The prolonged use of Reglan may cause tardive dyskinesia.  *See McNeil v. Wyeth*, 462 F.3d 364, 366–67 (5th Cir. 2006) (explaining the uses of Reglan and the potential adverse consequences from its prolonged prescription).

1976, and that he has been board certified in family practice since 1989. It then recites that he has personal knowledge of the standard of care for primary care and family medicine physicians and that he has reviewed Pustejovsky's medical records that he has acquired from various sources.

The report then alleges the following facts. A physician originally prescribed Reglan to Pustejovsky in 2002 to assist with abdominal and gastroesophageal issues, and Dr. Collini continued the prescription for almost three years. In December 2004, Pustejovsky began suffering from sleep disturbances and restlessness, and she also had tremors in her right hand.[2] Dr. Collini ended the Reglan prescription in January 2005. As the Reglan left Pustejovsky's system, the effects of its overuse were unmasked, and by the next month, she was diagnosed by Asher Imam, D.O. with "uncontrolled oral buccal dyskinesia." Over the next several months, two other doctors diagnosed Pustejovsky with tardive dyskinesia.

Dr. Haberer's report then relates that because tardive dyskinesia is a known risk of taking Reglan, as has been disclosed by the drug's manufacturer, the standard of care requires that a prescription for the drug must be limited to no more than twelve weeks and that those taking the drug should be closely monitored for symptoms of any moving disorder. The report also asserts that when Pustejovsky's hand tremors began, Dr. Collini should have tapered off Reglan, sought a substitute medication, and scheduled Pustejovsky for a neurological consultation.

_____

[2] ... The report alleged that the hand tremors began in February 2003.

3

Dr. Haberer also submitted his curriculum vitae with the report. The vitae indicates that Dr. Haberer is currently on an emergency room staff at a hospital in Eastland, Texas and that he has served in such a capacity at fourteen hospitals over the last thirty years. It further relates (among other things) that he received a bachelor's degree in the field of pharmacy, that he attended a four-year pharmacy specialist course in the early 1960s while he was in the air force, and that he was an associate professor of medicine at the Texas College of Osteopathic Medicine from 1976 to 1988.

In October 2006, Dr. Collini filed a motion to dismiss Pustejovsky's claim with prejudice, contending that she failed to make a good faith effort to serve an adequate expert report as required by section 74.351. Specifically, Dr. Collini argued that (1) Dr. Haberer did not qualify himself as an expert on liability and causation because his report failed to explain that he had any familiarity with prescribing Reglan or any experience in assessing the causal relationship between Reglan and tardive dyskinesia and (2) Dr. Haberer's report addressed causation only through conclusory statements.[3] After Pustejovsky filed a response to Dr. Collini's motion, Dr. Collini filed a reply. The reply incorporated Dr. Collini's complete medical file on Pustejovsky, spanning more than seven hundred pages, in an attempt to

---

[3] ... Concluding his report, Dr. Haberer expressed his opinion that "Dr. Collini's violations of the standard of care were a direct and proximate cause of Mrs. Pustejovsky's tardive dyskinesia and the worsening of her tardive dyskinesia caused by the Reglan."

4

discredit the factual information and resulting conclusions contained in Dr. Haberer's report.

On December 18, 2006, the trial court held a hearing on Dr. Collini's motion to dismiss. After Dr. Collini's counsel briefly argued the motion, the trial court denied it. Dr. Collini timely perfected this interlocutory appeal.

## The Sufficiency of Dr. Haberer's Report

In her sole issue, Dr. Collini contends that the trial court abused its discretion by refusing to dismiss Pustejovsky's claim because Dr. Haberer's report fails to demonstrate his expert qualifications through experience with Reglan or the causal relationship between that drug and tardive dyskinesia and also fails to provide a specific factual explanation of such a causal relationship.

Texas courts agree that review of a trial court's denial of a motion to dismiss under section 74.351 is subject to an abuse of discretion standard. *See, e.g., Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001); *San Jacinto Methodist Hosp. v. Bennett*, 256 S.W.3d 806, 811 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *Moore v. Gatica*, 269 S.W.3d 134, 139 (Tex. App.—Fort Worth 2008, pet. filed) (op. on remand). Also, a trial court's decision on whether a physician is qualified to offer an expert opinion in a health care liability claim is reviewed under an abuse of discretion standard. *Moore*, 269 S.W.3d at 139.

To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in

5

other words, we must decide whether the act was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986). Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Id.* A trial court does not abuse its discretion if it commits a mere error in judgment. *See E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995).

In a health care liability claim, a claimant must serve an expert report (that addresses liability and causation) on each defendant no later than the 120th day after the claim is filed. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (j). If an expert report has not been served on a defendant within the 120-day period, then on the motion of the affected defendant, the trial court must dismiss the claim with prejudice and award the defendant reasonable attorney's fees and costs. *Id.* § 74.351(b).

A report "has not been served" under the statute when it has physically been served but it is found deficient by the trial court. *Lewis v. Funderburk*, 253 S.W.3d 204, 207–08 (Tex. 2008). When no report has been served because the report that was served was found to be deficient, the trial court has discretion to grant one thirty-day extension to allow the claimant to cure the deficiency. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c).

6

A report is deficient (therefore subjecting a claim to dismissal) when it "does not represent an objective good faith effort to comply with the [statute's] definition of an expert report." *Id.* § 74.351(l); *see Richburg v. Wolf*, 48 S.W.3d 375, 377 (Tex. App.—Eastland 2001, pet. denied) (adding that it is the defendant's burden to demonstrate that the good faith standard has not been satisfied). While the expert report "need not marshal all the plaintiff's proof," it must provide a fair summary of the expert's opinions as to the applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6); *Palacios*, 46 S.W.3d at 875, 878.

To qualify as a good faith effort, the report must "discuss the standard of care, breach, and causation with sufficient specificity to inform the defendant of the conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit." *Palacios*, 46 S.W.3d at 875. A report does not fulfill this requirement if it merely states the expert's conclusions or if it omits any of the statutory requirements. *Id.* at 879. The information in the report "does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial." *Id.* When reviewing the adequacy of a report, the only information relevant to our inquiry is the information contained within the four corners of the document. *Id.* at 878; *see Bowie Mem'l Hosp. v. Wright*, 79

7

S.W.3d 48, 52 (Tex. 2002).[4] This requirement precludes a court from filling gaps in a report by drawing inferences or guessing as to what the expert likely meant or intended. *See Austin Heart, P.A. v. Webb*, 228 S.W.3d 276, 279 (Tex. App.—Austin 2007, no pet.) (citing *Bowie Mem'l Hosp.*, 79 S.W.3d at 52).

An expert report concerning standards of care for physicians "authored by a person who is not qualified to testify . . . cannot constitute an adequate report." *In re Windisch*, 138 S.W.3d 507, 511 (Tex. App.—Amarillo 2004, no pet.); *see Ehrlich v. Miles*, 144 S.W.3d 620, 624–25 (Tex. App.—Fort Worth 2004, pet. denied). To be an "expert" on the departure from a physician's standard of care (therefore qualifying the submission of an expert report), a person must be a physician who

---

[4] ... We recognize that the Beaumont Court of Appeals has held that medical records submitted by a defendant in an objection to an expert report may be considered by the trial court in determining the adequacy of the report. *See Baptist Hosps. of Se. Tex. v. Carter*, No. 09-08-00067-CV, 2008 WL 2917109, at *3 n.4 (Tex. App.—Beaumont July 31, 2008, no pet.) (mem. op.). Dr. Collini relies on *Carter* to urge us to review the medical records submitted in her reply at trial, which she claims demonstrate inconsistencies with the factual statements contained in Dr. Haberer's report. In essence, Dr. Collini asserts that we should consider information outside of the expert report on her behalf while we are prohibited from doing so on behalf of Pustejovsky. We disagree with the reasoning expressed by our sister court in *Carter*, and we rely on the language contained in *Palacios* and *Bowie Memorial Hospital* to constrain our review of the report's adequacy at this preliminary stage in the proceedings to the specific information and allegations contained within it. *See Bowie Mem'l Hosp.*, 79 S.W.3d at 53 (limiting review of an expert report to information contained within its four corners); *Palacios*, 46 S.W.3d at 878 (stating that a court "should look no further than the report"); *see also Maris v. Hendricks*, 262 S.W.3d 379, 386 (Tex. App.—Fort Worth 2008, pet. denied) (prohibiting a physician from using deposition testimony to attack the adequacy of an expert report served upon him).

8

(1) is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose;[5]

(2) has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and
(3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care.

Tex. Civ. Prac. & Rem. Code Ann. § 74.351(5)(A), § 74.401(a) (Vernon 2005). In determining the third element of this standard, courts must consider whether the physician who completed the report (1) is board certified or has other substantial training or experience in an area of medical practice relevant to the claim and (2) is actively practicing medicine in rendering medical care services relevant to the claim. *Id.* § 74.401(c). In other words,

> there is no validity, if there ever was, to the notion that every licensed medical doctor should be automatically qualified to testify as an expert on every medical question . . . . [T]he proponent of the testimony has the burden to show that the expert possesses special knowledge as to the very matter on which he proposes to give an opinion.

*Ehrlich*, 144 S.W.3d at 625 (quoting *Broders v. Heise*, 924 S.W.2d 148, 152–53 (Tex. 1996)). For this reason, the offered report must generally demonstrate that the expert has "knowledge, skill, experience, training, or education regarding the specific issue before the court which would qualify the expert to give an opinion on that

---

[5] ... Dr. Collini has not challenged that Dr. Haberer was practicing medicine at the time he submitted his report or when Pustejovsky's claim arose. Therefore, we will limit our analysis to the second and third statutory prongs related to expert qualifications on the standard of care issue. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.401(a)(2)–(3).

9

particular subject." *Id.* (quoting *Roberts v. Williamson*, 111 S.W.3d 113, 121 (Tex. 2003)).

However, there are certain standards of medical care that apply to multiple schools of practice and any medical doctor. *See McKowen v. Ragston*, 263 S.W.3d 157, 165 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Blan v. Ali*, 7 S.W.3d 741, 745–46 (Tex. App.—Houston [14th Dist.] 1999, no pet.). Therefore, a physician "who is not of the same school of medicine [as the defendant] is competent [to submit a report] if he has practical knowledge of what is usually and customarily done by a practitioner under circumstances similar to those confronting the defendant." *Ehrlich*, 144 S.W.3d at 625; *see Marling v. Maillard*, 826 S.W.2d 735, 740 (Tex. App.—Houston [14th Dist.] 1992, no writ).

**Dr. Haberer's Expert Qualifications**

Dr. Collini contends that Dr. Haberer failed to qualify himself as an expert because his report does not demonstrate any expertise or experience in prescribing Reglan or diagnosing or treating drug-induced tardive dyskinesia. Pustejovsky asserts that Dr. Haberer was not required to address his experience with Reglan or tardive dyskinesia because the specific issue in this case concerns a physician's duty to comply with a drug manufacturer's expressed instructions and warnings, which is a common standard known by all physicians.

> **Was Dr. Haberer's Report Required to Demonstrate His Knowledge of and Experience Related to the Accepted Standards of Medical Care Specifically Concerning the Prescription of Reglan?**

Dr. Collini first contends that because Dr. Haberer's current area of practice is emergency medicine, he cannot address the standard of care that applies to her, because she is an internist. However, the proper inquiry in assessing Dr. Haberer's qualifications to submit an expert report is not his area of practice, but his familiarity with the issues involved in the claim before the court. *See Blan*, 7 S.W.3d at 745.

Next, Dr. Collini asserts that Dr. Haberer's report is insufficient to establish his qualifications because it does not establish that he has any specific experience "regarding the prescription of Reglan." To establish his qualifications, Dr. Haberer was required to demonstrate experience with the specific issues raised by Pustejovsky's claim. *See Ehrlich*, 144 S.W.3d at 625.

Pustejovsky's original petition indicated that the specific factual issue she was raising in her claim concerned the lengthy, ongoing prescription of Reglan. Dr. Haberer's report describes that

> [t]he standard of care pertaining to Reglan is to limit the time prescribed to no more than 12 weeks and the lowest dose needed to provide therapeutic relief. For gastrointestinal problems, Reglan's manufacturer specifies that this drug should be prescribed for no more than 4–12 weeks and this is the standard of care applicable to this case. Tardive dyskinesia (TD) is a known complication of metoclopramide, which is also disclosed by Reglan's manufacturer.

There are minimum, general standards of prescribing medication that are common to all physicians and all schools of practice. *See Patel v. Williams ex rel. Estate of Mitchell*, 237 S.W.3d 901, 905 (Tex. App.—Houston [14th Dist.] 2007, no

11

pet.) (approving of an expert report's explanation of the breach of the standard of care for prescribing Risperdal because its use for treating dementia had not been approved by the FDA and concluding that a "reasonable physician should not, as a general proposition, prescribe the wrong drug for his patients"); *Puempel v. Lopez*, No. 05-07-00371-CV, 2007 WL 3173405, at *3–4 (Tex. App.—Dallas Oct. 31, 2007, no pet.) (mem. op.) (affirming the use of FDA and PDR guidelines to define the standard of care for prescribing weight loss medication); *Metot v. Danielson*, 780 S.W.2d 283, 286–87 (Tex. App.—Tyler 1989, writ denied), *overruled on other grounds by Cecil v. Smith*, 790 S.W.2d 709, 716 (Tex. App.—Tyler 1990) (op. on reh'g), *rev'd*, 804 S.W.2d 509 (Tex. 1991) (holding that the trial court abused its discretion when it decided that a board-certified doctor was not qualified to testify about a neurosurgeon's "general minimum standards" for the prescription of drugs that are "applicable to all physicians"). Dr. Haberer's report indicates that he certainly has experience with the general standards related to prescribing medications. For instance, it demonstrates that he is board certified in family practice, that he has "personal knowledge of the standard of care applicable to . . . family medicine," that he has experience in practicing in hospitals and in family practice, and that, as explained above, his undergraduate degree and post-graduate employment and research activities concerned pharmaceutical matters. Based on this experience, his report demonstrates his qualifications to opine on the duties to follow a manufacturer's instructions about the length of time a drug should be

12

prescribed, heed warnings specifically given by the manufacturer related to that drug, and monitor a patient's conditions that may be connected to those warnings. Because Dr. Haberer's report indicates that he had knowledge of the accepted standards of medical care related to prescribing medication and acting on such medication's related instructions and warnings and that he has experience and training in doing so, we conclude that he was qualified to submit a report establishing Dr. Collini's standards of care in this case.[6]  *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.401(a)(2), (3).

### Was Dr. Haberer's Report Required to Demonstrate His Knowledge of and Experience Related to the Causal Relationship of Reglan with Tardive Dyskinesia?

Next, Dr. Collini asserts that Dr. Haberer has not qualified himself as an expert on causation because he has not recited experience or expertise in the diagnosis and treatment of drug-induced tardive dyskinesia. Along with the standards of care and a description of a physician's inability to satisfy those standards, an expert report served under section 74.351 must address the causal relationship to the damages

---

[6] If Dr. Haberer had submitted no details regarding the manufacturer's warnings related to Reglan, he likely would have been required to demonstrate his specific experience with the drug and its effects related to his standard of care assertion, because he would have been assessing blame on Dr. Collini for prescribing the drug based on his independent knowledge of it. However, Dr. Haberer's report relies on the manufacturer's instructions and warnings to assert that when presented with such instructions, a physician has a duty to follow them, and when presented with such warnings, a physician has a duty to monitor conditions related to them. We conclude that these asserted duties do not require specialized understanding. *See Blan*, 7 S.W.3d at 745.

13

the plaintiff has claimed. *Id.* § 74.351(j), (r)(6). A physician is qualified to submit an expert report on the causal relationship between a departure from a standard of care and an injury when he would otherwise be qualified to address causation under rule 702 of the Texas rules of evidence. *Id.* § 74.351(r)(5)(C); *see* Tex. R. Evid. 702;[7] *Thomas v. Alford*, 230 S.W.3d 853, 857 (Tex. App.—Houston [14th Dist.] 2007, no pet.). The party offering the witness as an expert on causation must establish that the witness is qualified to testify under rule 702. *Mem'l Hermann Healthcare Sys. v. Burrell*, 230 S.W.3d 755, 762–63 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (deciding that a doctor was qualified to opine about causation because his report demonstrated direct experience with treating decubitus ulcers, which was the condition at issue). To be so qualified, "an expert must have knowledge, skill, experience, training, or education regarding the specific issue before the court that would qualify the expert to give an opinion on that particular subject." *Thomas,* 230 S.W.3d at 857, 860 (citing *Broders*, 924 S.W.2d at 153) (holding that because the doctor who submitted an expert report did not demonstrate knowledge of cancer treatment, he was not qualified to offer an opinion that an earlier diagnosis could have produced a better outcome for the plaintiff). Further, to justify the submission of an opinion under the rules of evidence, the proponent of the opinion must show

---

[7] Rule 702 states that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Tex. R. Evid. 702.

that the opinion is reliable. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 578 (Tex. 2006).

While Dr. Haberer's curriculum vitae does establish a background in pharmaceutical matters, his report does not indicate that he has any specific knowledge, experience, education, or training in assessing the causal relationship between the prolonged use of Reglan and tardive dyskinesia. In fact, his report does not state that he has any experience or training regarding Reglan or tardive dyskinesia at all; rather, it only generally states that he has knowledge applicable to "primary care and family medicine." The report does not indicate that the diagnosis of tardive dyskinesia resulting from prolonged Reglan use is a matter that is developed in various fields to the extent that any physician would be qualified to report about it. Dr. Haberer, therefore, has not demonstrated his qualifications, under the standards set forth above, to support his attempt to causally link the alleged breach of Dr. Collini's duty to follow manufacturer's instructions and warnings to Pustejovsky's deteriorating condition starting in December 2004.

Pustejovsky contends that Dr. Haberer's qualifications to assess causation may be established by the facts that Reglan's manufacturer disclosed tardive dyskinesia as a known complication and that the report details that three physicians diagnosed her with dyskinesia related to her Reglan use. Courts have held that in addressing causation, a reporting physician may rely on the opinions of other individuals who have rendered reports or diagnoses. *See Kelly v. Rendon*, 255

15

S.W.3d 665, 676 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (noting that "nothing in the health care liability statute prohibits an otherwise qualified physician from relying on [another opinion] in the formation of the physician's own opinion"); *Cresthaven Nursing Residence v. Freeman,* 134 S.W.3d 214, 234 (Tex. App.—Amarillo 2003, no pet.) (holding that a testifying physician properly relied, in part, on the opinions of other doctors in establishing causation); *see also* Tex. R. Evid. 703 (stating that an expert can base an opinion on reasonably reliable data). However, in both *Kelly* and *Freeman,* the reporting physicians also demonstrated their own qualifications related to their specific experience with conditions involved in those claims. *See Kelly*, 255 S.W.3d at 673–75; *Freeman*, 134 S.W.3d at 232. Also, while Dr. Haberer's report briefly states the conclusions of the three physicians who examined Pustejovsky, it does not provide any background on the experience or training of those physicians that would signal to the trial court that those opinions were reliable. *See* Tex. R. Evid. 703 (requiring reasonable reliance in the formation of an expert opinion); *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 728 (Tex. 1998) (noting that a trial court must determine whether the analysis used to reach an expert's conclusions is reliable).

Finally, Dr. Haberer's report contains several statements regarding Reglan or tardive dyskinesia that are unrelated to either the other physicians' opinions or the manufacturer's instructions and warnings. For instance, Dr. Haberer states that Reglan can "help mask the symptoms of dyskinesia" and that the "risk of [tardive

16

dyskinesia] is greater in women, the elderly,[8] and increases with duration of use."

As demonstrated, while Dr. Haberer may be well qualified to make these assertions, the four corners of his report simply do not provide any details regarding such qualifications.

We hold that Dr. Haberer has not adequately demonstrated his qualifications to submit an expert report on the issue of causation; therefore, his report is deficient and does not comply with section 74.351. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(l), (r)(5)–(6); *Palacios*, 46 S.W.3d at 877; *Windisch*, 138 S.W.3d at 511 (noting that a report authored by an unqualified doctor cannot be adequate). Therefore, Dr. Haberer's report is insufficient; we sustain Dr. Collini's sole issue. We now turn to the issue of causation to provide the trial court with guidance on the retrial of this issue should the trial court grant Pustejovsky an extension. *See Edinburg Hosp. Auth. v. Trevino*, 941 S.W.2d 76, 81 (Tex. 1997).

**The Adequacy of Dr. Haberer's Causation Explanation**

Finally, Dr. Collini asserts that apart from the issues regarding qualifications, Dr. Haberer's report contains an insufficient explanation of the causal relationship between Dr. Collini's prescriptions of Reglan and Pustejovsky's conditions. As we have described, an expert report must provide a fair summary of the expert's opinions on the causal relationship of a breach from a standard of care to the harm claimed in the case, with enough specificity to allow the trial court to conclude that

---

[8] … Pustejovsky was 76 years old when Dr. Haberer filed his report.

17

the plaintiff's claims have merit. *Palacios*, 46 S.W.3d at 875, 878; *see* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6). Applying this standard, an expert report is insufficient when it contains only a series of repetitious, conclusory statements regarding causation. *See Jones v. King*, 255 S.W.3d 156, 159 (Tex. App.—San Antonio 2008, pet. denied) (mem. op.) (adding that an expert must "explain the basis of his statements to link his conclusions to the facts").

We hold that Dr. Haberer's report addresses causation in a conclusory fashion and is therefore insufficient. While the report adequately describes Pustejovsky's alleged physical harm (including her sleep disturbances, hand tremors, and leg restlessness) and states the conclusions of four doctors (including Dr. Haberer)[9] that such harm was related to Reglan use, it does not provide any medical detail as to *how* the Reglan caused Pustejovsky's conditions or, more importantly, *how* Dr. Collini's specific prescriptions of Reglan (beyond the taking of Reglan generally) attributed to the harm.[10] And while the manufacturer's warning (that Reglan should

---

[9] As described above, Dr. Haberer's opinion on causation is limited to one conclusory sentence at the end of his report.

[10] Dr. Haberer's report indicates that the three physicians' respective conclusions were that Pustejovsky's tardive dyskinesia was "attributed to the use of Reglan," "secondary to [Reglan]," and "due to Reglan." However, as explained above, Pustejovsky's petition did not fault Dr. Collini with prescribing Reglan generally; rather, it focused on "ongoing Reglan prescriptions." Therefore, the conclusions on causation of those three physicians, to the extent that they are revealed in Dr. Haberer's report, do not relate to a causal relationship with Dr. Collini's alleged breach of the specific standard of care at issue—the *prolonged* prescription of Reglan to Pustejovsky.

18

not be prescribed for more than twelve weeks) coupled with the causation opinions of the four doctors (though conclusory) may create a reasonable inference that Dr. Collini's prolonged prescription of Reglan caused Pustejovsky's condition, we are not permitted to rely on that inference in reviewing Dr. Haberer's report.[11] *See Webb*, 228 S.W.3d at 279 (noting that courts are precluded "from filling gaps in a report by drawing inferences"); *see also Castillo v. August*, 248 S.W.3d 874, 883 (Tex. App.—El Paso 2008, no pet.) (explaining that courts are not permitted to infer causation). Because Dr. Haberer's report does not adequately address the link between Dr. Collini's alleged breach of her standard of care and Pustejovsky's tardive dyskinesia that allegedly resulted, the report is insufficient.

**Proper Disposition Following Reversal**

In her brief, Dr. Collini contends that upon reversal, we should render a judgment dismissing Pustejovsky's claims with prejudice. Pustejovsky asserts that if we hold Dr. Haberer's report to be insufficient, we should remand this case to the

---

[11] ... While it seems to us that we should be able to determine that the explanation on causation is adequate when three physicians' diagnoses of tardive dyskinesia have been expressed in the report, we simply are constrained from doing so here because we are limited to the report's four corners, which do not contain a specific link of the diagnoses to Dr. Collini's actions or those three physicians' qualifications and the documentation they relied on to form their opinions. *See Palacios*, 46 S.W.3d at 878; *Jones*, 255 S.W.3d at 159– 60.

19

trial court to allow it to consider granting thirty additional days to cure the deficiency.[12]

The Texas Supreme Court has held that section "74.351's plain language permits one thirty-day extension when the court of appeals finds deficient a report that the trial court considered adequate." *Leland v. Brandal*, 257 S.W.3d 204, 207 (Tex. 2008). Accordingly, the trial court should have an opportunity to consider granting Pustejovsky an extension to cure the deficiencies detailed in this opinion.

## Conclusion

Having sustained Dr. Collini's only issue, we reverse the trial court's decision regarding the sufficiency of Dr. Haberer's report and remand this case to that court to consider the issue of whether to grant Pustejovsky a thirty-day extension to file an adequate expert report.

TERRIE LIVINGSTON
JUSTICE

PANEL: LIVINGSTON, DAUPHINOT, and GARDNER, JJ.

DAUPHINOT, J. filed a dissenting and concurring opinion.

DELIVERED: February 12, 2008

---

[12] Pustejovsky also sought such an extension as alternative relief from the trial court in the event that it found the expert report to be deficient.

20



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-005-CV

WENDY COLLINI, M.D.                                                      APPELLANT

V.

APPELLEE

MARTHA PUSTEJOVSKY

------------

FROM THE 48TH DISTRICT COURT OF TARRANT COUNTY

------------

## DISSENTING AND CONCURRING OPINION ON REMAND

------------

I concur with the result reached by the majority. But I write separately to emphasize that this opinion should be limited to the specific facts at issue and also to caution that we as judges must guard against the idea that it is better to toss out legitimate medical claims than to let a frivolous claim proceed.

An expert report under section 74.351 of the Texas Civil Practice and Remedies Code does not need to rise to the level of proof sufficient to win at trial;

1

it need only assure the trial court that the plaintiff's claim is not frivolous.[1] The report

must, of course, demonstrate that the expert is qualified to render the opinions given

in the report.[2] As the majority points out, Dr. Haberer's report did not demonstrate

any personal expert knowledge, gained either from experience or training, about the

effects of the overprescription of Reglan. His assertions about causation were

based on the warnings of the drug manufacturer and the diagnoses of other doctors

whose qualifications do not appear in his report.

A layperson can determine that if a drug manufacturer warns that

overprescribing a drug could cause certain injuries—in this case tardive dyskinesia

("TDk")—then it is a possibility that a doctor's overprescription of the drug could

indeed cause such injuries. But Texas law requires that, in medical malpractice

actions, a medical expert give an opinion about whether a doctor's act in fact did

cause the alleged injuries.[3] To qualify as an expert, a person must demonstrate

---

[1] *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006) (stating that expert report "need not marshal every bit of the plaintiff's evidence" but must provide a "fair summary" of expert's opinion on standard of care, breach of that standard of care, causation, and harm).

[2] *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(5)(A) (Vernon Supp. 2008), § 74.401(a)(4) (Vernon 2005) (defining "expert" to mean someone qualified on the basis of training or experience to offer an expert opinion).

[3] *See id.* § 74.351(a), (r)(6) (requiring plaintiff alleging medical malpractice claim to provide an expert report and defining "expert report" to mean a report by an expert that provides, among other things, the expert's opinion regarding causation).

some knowledge beyond what a layperson would have.[4] Thus, in this case, the expert must demonstrate some basis for knowledge about causation beyond stating that if Reglan's manufacturer warned that overprescription of the drug could cause TDk, then ipso facto Dr. Collini's overprescription of Reglan did cause Mrs. Pustejovsky's TDk.[5]

I agree with the majority that Dr. Haberer's report does not show that in this specific area, he had any knowledge beyond that of a layperson. He did not, for example, show that he had conducted research on TDk or on Reglan.[6] Although Dr. Haberer had knowledge that failing to heed a drug manufacturer's warning can cause injury, nothing in his report shows the basis for his assertion that the

---

[4] *See id.* § 74.351(r)(5)(C) ("'expert' means . . . a physician who is otherwise qualified to render opinions on [causation] under the Texas Rules of Evidence"); Tex. R. Evid. 702 (stating that a witness may be qualified as an expert "by knowledge, skill, experience, training, or education").

[5] *See Leland v. Brandal*, 217 S.W.3d 60, 62–63 (Tex. App.—San Antonio 2006) (holding that anesthesiologist's report showed he was qualified to render opinion that cessation of medicines taken by plaintiff may cause stroke but did not show his qualification to give opinion that cessation of medication did cause plaintiff's stroke), *aff'd*, 257 S.W.3d 204 (Tex. 2008).

[6] *See, e.g.*, *Salvato v. Angelo*, No. 14-07-00784-CV, 2008 WL 961772, at *6–7 (Tex. App.—Houston [14th Dist.] Apr. 08, 2008, no pet.) (mem. op.) (holding doctor qualified to opine on negligence of defendant in prescribing anabolic steroids and causation of plaintiff's injuries even though expert doctor was not an endocrinologist when her report provided sufficient evidence of her knowledge in connection with clinical studies prescribing and monitoring hormones in patients).

overprescription of the drug at issue here actually caused the alleged injuries in this case.[7]

But I emphasize that the law is also clear that a medical expert is not uniformly required to be specialized in an area to be qualified to opine on it. And an expert need not necessarily have personal professional experience with a drug or procedure to be qualified to give an opinion that the drug or procedure caused a plaintiff's alleged injuries. The expert is qualified to give an opinion on causation so long as the expert demonstrates some "knowledge, skill, experience, training, or education" sufficient to support the opinion.[8]

The legislature did not intend to make it impossible or unjustly burdensome for legitimate medical malpractice claims to proceed to and succeed at trial. In this case, for example, a doctor failed to heed warnings by Reglan's manufacturer that its overuse can cause TDk. Three different doctors examined Mrs. Pustejovsky and concluded that she developed TDk because of the use of Reglan. On the face of it, this case is an excellent example of a nonfrivolous claim. Yet we are constrained to hold that evidence of these facts alone is not good enough to allow Mrs. Pustejovsky her day in court.

---

[7] ... *See Leland*, 217 S.W.3d at 62–63.

[8] ... *See* Tex. R. Evid. 702.

Statutes such as section 74.351 must be read in light of the open courts provision of our Texas constitution.[9]  The legislature did not abrogate that constitutional protection in passing section 74.351.  We must not with our opinions indicate a zeal to scrutinize expert reports more closely than we are required to under the law, nor an apathy toward whether even legitimate claims are tossed out of court; we must always remember our obligation to preserve, protect, and defend the constitution of this state.  I believe that in fulfilling that obligation, we must explicitly limit our holding to this case to prevent its broad misapplication in other cases.

Because the majority does not explicitly so limit the holding, I respectfully dissent.

LEE ANN DAUPHINOT
JUSTICE

DELIVERED:  February 12, 2009

---

[9] Tex. Const. art. I, § 13.

5