In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

## NO. 09-13-00486-CV

_____

### HEB GROCERY COMPANY, LP, Appellant

### V.

### JOAN GALLOWAY, Appellee

On Appeal from the County Court at Law No. 1
Jefferson County, Texas
Trial Cause No. 122605

### MEMORANDUM OPINION

This is an accelerated appeal from the trial court's order denying a motion to dismiss a health care liability claim pursuant to section 74.351 of the Texas Civil Practice and Remedies Code.[1] We reverse and remand.

---

[1]Section 74.351 was amended after Galloway's cause of action accrued, and the prior law is applicable to her claim. *See* Act of June 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875, amended by May 18, 2005, 79th Leg., R.S., ch. 635, 2005 Tex. Gen. Laws 1590 (current version at Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (West Supp. 2013)). Because the amendment does not affect our analysis, we cite to the current version of the statute.

BACKGROUND

In 2013, Joan Galloway (Galloway) asserted a health care liability claim against HEB Grocery Company, LP (HEB). Galloway contends that HEB mistakenly mixed the wrong medication (Ketoconazole, an anti-fungal medicine) in with her blood pressure medication (Coreg) when HEB filled the prescription, thereby causing her to suffer injuries and damages. She alleges that as a proximate result of HEB's negligence and gross negligence in mis-filling the prescription, she suffered and will suffer from "uncontrolled blood pressure, neurologic symptoms, pain, great physical and mental anguish and considerable consequential damages." Galloway seeks actual and punitive damages. HEB filed an answer in which it denies Galloway's allegations.

Galloway served HEB with an expert report from Jerry Keepers, M.D. Dr. Keepers attached his curriculum vitae, as well as other exhibits, to the report. HEB filed objections to Dr. Keepers' report, along with a motion to dismiss pursuant to section 74.351. The trial court held a hearing on the "Defendant's Objections to Plaintiff's Expert's Report and Qualifications" and issued an order denying the objections and the motion to dismiss. HEB appealed.

2

JURISDICTION OF THIS COURT

As a preliminary matter, Galloway challenges the jurisdiction of this Court to hear the appeal, citing section 51.014(9) of the Texas Civil Practice & Remedies Code. She argues that HEB sought relief "under section 74.351(b) and an extension was not granted under [section] 74.351." Galloway further contends that this Court "is without jurisdiction because the order complained of denied relief sought by a motion under § 74.351(*l*); relief was not granted under § 74.351(*l*)." Neither argument is correct.

HEB's motion to dismiss expressly sought relief under section 74.351(b). Section 74.351(b) provides that upon motion, the trial court must dismiss the claim if an expert report is not served within the time required by section 74.351(a). The trial court stated in its order that "Defendant's Motion to Dismiss is hereby, in all things, DENIED." *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (West Supp. 2013). Section 51.014(a)(9) authorizes an interlocutory appeal from an order denying relief under section 74.351(b), and this Court therefore has jurisdiction of this interlocutory appeal. *See id.*; *Lewis v. Funderburk*, 253 S.W.3d 204, 207-08 (Tex. 2008) (authorizing appeal from trial court order determining that expert report was adequate and denying motion to dismiss).

3

DR. KEEPERS' REPORT

According to Dr. Keepers' report and curriculum vitae (CV) attached to his report, he is a licensed medical doctor in active practice in Harris County and Jefferson County, Texas. He states that he provides medical services to patients, including writing prescriptions for medications for his patients, and he has "either training as and/or served as a consultant, and/or observed healthcare providers in the same fields as [HEB]." Further, he indicates that he gives "direct care to patients requiring the prescription of medicines"[;] he and his patients "routinely rely on pharmacists to accurately fill prescriptions"[;] he is "familiar with the consequences of the improper filling of prescription medication"[;] and he is familiar with the "standards of care for both pharmacists and pharmacies." His CV describes special expertise primarily in the field of anesthesiology.

Dr. Keepers says that he reviewed medical records from health care providers that treated Galloway for conditions after the alleged occurrence, including records from Dr. Ron Gentry, Dr. Michael Campbell, and Methodist Hospital. He also reviewed Galloway's first amended original petition and the "Patient Information" insert associated with Coreg. Dr. Keepers notes Galloway has "lived with high blood pressure which [] is managed by medication." Dr. Keepers indicates that HEB filled Galloway's prescription on or about January 8,

4

2011, for Coreg, her blood pressure medication. She began experiencing "acute weakness, dizziness and nausea for a period of 3 days, which prompted her to go to her primary care physician[.]" Her primary care physician sent her to Methodist Hospital for admission and treatment.

Upon admission to Methodist Hospital, Galloway's blood pressure was 202/105 and her heart rate was 97. She was experiencing atrial fibrillation. The admitting physician ordered several tests, including but not limited to, an MRI and MRA of the head and neck, and an "'echocardiogram, cardiac enzymes, UA with micro, and blood cultures.'" An IV was administered to provide Galloway with fluids, and "'strict blood pressure control'" was ordered. An angiogram confirmed a "2-3 mm saccular aneurysm at the origin of the left posterior communicating artery." After four days in the hospital, Galloway was released. She was instructed to double her Coreg medication at home and to make an appointment for follow-up with Dr. Michael Campbell.

The report indicates that after Galloway returned home from the hospital, she "continued to experience" erratic blood pressure, and she noticed there were two different-sized pills in her Coreg bottle. The report indicates she returned the bottle to the HEB pharmacy, where she was informed by the HEB pharmacist that "ketoconazole was accidentally mixed in with her Coreg[.]"

5

Dr. Keepers' report references notes from one page of the records he reviewed from Dr. Campbell. However, Dr. Campbell's CV and qualifications are not included in the record before us. According to Dr. Keepers, "Campbell noted it was unclear if doubling the home medication regimen would have a positive effect on Ms. Galloway's blood pressure." Furthermore, Dr. Keepers' report also references a letter from Dr. Ron Gentry. Dr. Gentry's CV and qualifications also are not included in the record before us. Dr. Gentry's letter is attached to Keepers' report and Dr. Gentry's letter reads as follows:

> As a consequence of receiving the incorrect prescription from HEB pharmacy, it is my opinion that there is a reasonable medical probability that Mrs. Galloway's blood pressure was subsequently uncontrolled beyond what would be otherwise expected. As a consequence of her uncontrolled pressure, Mrs. Galloway experienced neurologic symptoms and required hospitalization.

Dr. Keepers also attached the "Patient Information" insert for Coreg to his report. He references the following statement from the insert: "Do not stop taking COREG and do not change the amount of COREG you take without telling your doctor." According to Dr. Keepers, "Coreg is indicated for the treatment of mild-to-severe chronic heart failure of ischemic or cardiomyopathic origin, usually in addition to diuretics, ACE inhibitors, and digitalis, to increase survival and, also, to reduce hospitalization."

6

MOTION TO DISMISS AND OBJECTIONS

HEB objected to Dr. Keepers' report and sought a dismissal of Galloway's claims with prejudice. HEB argues that Galloway failed to serve a sufficient expert report that satisfies the requirements of section 74.351. HEB contends that Dr. Keepers' report fails to establish his qualifications in the areas of pharmacology, cardiology, nephrology, and neurology and it fails to establish causation.

HEB raises the following deficiencies: Keepers' report fails to establish that Keepers is qualified to address how the acts or omissions of HEB or its employees were causally related to Galloway's alleged medical conditions, complications, and injuries; Dr. Keepers' report does not identify any particular test result, diagnosis, prognosis or relevant data, in determining the cause of Galloway's alleged injuries; Keepers' opinions regarding causation are conclusory and speculative, and therefore legally insufficient; Keepers' report fails to rule out other causes, relies on caregivers' opinions without establishing that those opinions are reliable and based on an adequate foundation; and the report relies on contrary opinions which fail to equate to medical causation. HEB argues that the trial court abused its discretion by refusing to dismiss Galloway's claim under section 74.351 because Dr. Keepers' report fails to establish he is qualified to testify that Galloway's alleged injuries were caused by HEB's alleged mixing of Ketoconazole with her

7

prescription for Coreg, and that Dr. Keepers' report fails to explain how HEB's alleged breach caused Galloway's alleged injuries.

THE STANDARD OF REVIEW AND APPLICABLE LAW

We review the trial court's decision regarding the adequacy of Dr. Keepers' expert report under an abuse of discretion standard. *Am. Transitional Care Ctrs. of Tex.*, *Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001). In reviewing the trial court's decision, we may not substitute our judgment for that of the trial court in reviewing factual matters or matters committed solely to the trial court's discretion. *See Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex. 2002); *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992). "Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred." *Palladian Bldg. Co. v. Nortex Found. Designs*, *Inc.*, 165 S.W.3d 430, 433 (Tex. App.—Fort Worth 2005, no pet.). "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles." *Bowie Mem'l Hosp.*, 79 S.W.3d at 52. A trial court also abuses its discretion if it fails to analyze or apply the law correctly. *Walker*, 827 S.W.2d at 839-40.

8

A health care liability claimant must provide each defendant physician and health care provider with an expert report within a specified time. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). The report serves a two-fold purpose: (1) to inform the defendant of the specific conduct the plaintiff has called into question; and (2) to provide a basis for the trial court to conclude the plaintiff's claims have merit. *Palacios*, 46 S.W.3d at 879; *see also Bowie Mem'l Hosp.*, 79 S.W.3d at 52; *HEB Grocery Co. v. Farenik*, 243 S.W.3d 171, 173 (Tex. App.—San Antonio 2007, no pet.).

> The statute defines "expert report" as follows:
>
> a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6). The defendant may file a motion challenging the adequacy of the report. *Id.* § 74.351(*l*).

According to the express wording of the statute, the trial court "shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." *Id.* § 74.351(*l*). When determining whether the report represents a good-faith effort to comply with

9

the statute, the trial court's inquiry is limited to the four corners of the report. *See Wright*, 79 S.W.3d at 53; *Palacios*, 46 S.W.3d at 878. To constitute a "good-faith effort," the report "must discuss the standard of care, breach, and causation with sufficient specificity to inform the defendant of the conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit." *Palacios*, 46 S.W.3d at 875. While the expert report "need not marshal all the plaintiff's proof," it must provide a fair summary of the expert's opinions as to the applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6); *Palacios*, 46 S.W.3d at 875, 878. In determining the adequacy of an expert report, the trial court reviews the pleadings to determine the claims alleged and whether the report addresses those claims. *See Windsor v. Maxwell*, 121 S.W.3d 42, 51 (Tex. App.—Fort Worth 2003, pet. denied).

An expert report concerning the standard of care of a health care provider regarding causation "authored by a person who is not qualified to testify . . . cannot constitute an adequate report." *In re Windisch*, 138 S.W.3d 507, 511 (Tex. App.—Amarillo 2004, orig. proceeding); *see Ehrlich v. Miles*, 144 S.W.3d 620, 624-26

10

(Tex. App.—Fort Worth 2004, pet. denied) (applying former version of section 74.351(a)). A physician is qualified to submit an expert report on the causal relationship between a departure from the standard of care and an injury when he would otherwise be qualified to address causation under the Texas Rules of Evidence. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(5)(C). A person may qualify as an "expert" on the question of whether the health care provider departed from the accepted standard of care if the person (1) is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider; (2) has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care. Tex. Civ. Prac. & Rem. Code Ann. § 74.402(b) (West 2011). To be qualified on the basis of training or experience, the person must be certified or have other substantial training or experience in an area of health care practice relevant to the claim and must be actively practicing health care in rendering health care services relevant to the claim. *Id.* § 74.402(c) (West 2011).

Every licensed medical doctor is not automatically qualified to testify as an expert on every medical question, and the proponent of that testimony must show

11

that the expert possesses special knowledge regarding the matter on which he proposes to give an opinion. *Ehrlich*, 144 S.W.3d at 625. Accordingly, the offered report must demonstrate that the expert has "'knowledge, skill, experience, training, or education regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject.'" *Id.* (quoting *Roberts v. Williamson*, 111 S.W.3d 113, 121 (Tex. 2003)). The expert report must do more than merely allege that the expert is a medical doctor in order to render opinions about the standard of care and causation, and the reviewing court cannot fill in gaps in a report by drawing inferences. *See, e.g.*, *Collini v. Pustejovsky*, 280 S.W.3d 456, 465-67 (Tex. App.—Fort Worth 2009, no pet.) (Trial court erred in denying the physician's motion to dismiss because the report did not demonstrate that the expert was qualified to testify with regard to causation.).

It is unnecessary for the expert in his report to rule out all other possible causes or meet the summary judgment or trial standard of proof required when litigating the merits. *Palacios*, 46 S.W.3d at 879; *Baylor Med. Ctr. v. Wallace*, 278 S.W.3d 552, 562 (Tex. App.—Dallas 2009, no pet.). "To constitute a good-faith effort to establish the causal-relationship element, the expert report must fulfill *Palacios*'s two-part test." *Bowie Mem'l Hosp.*, 79 S.W.3d at 52. The expert report must explain the basis of the expert's opinions and link them to the facts. *Id.*

12

When determining whether a report adequately explains how the defendant health care provider caused a patient's injury, we evaluate whether the report demonstrates causation beyond mere conjecture. *See Wright*, 79 S.W.3d at 53; *Rosemond v. Al-Lahiq*, 362 S.W.3d 830, 836 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). A causal relationship is established by proof that the negligent act or omission was a substantial factor in bringing about the harm and that absent this act or omission, the harm would not have occurred. *Costello v. Christus Santa Rosa Health Care Corp.*, 141 S.W.3d 245, 249 (Tex. App.—San Antonio 2004, no pet.).

DEFICIENCY RELATING TO QUALIFICATION TO RENDER OPINION ON CAUSATION

As we have noted, Dr. Keepers states in his report that he is a medical doctor who treats patients on a regular basis and prescribes medications for them, and he states: "I have either training as and/or served as a consultant, and/or observed healthcare providers in the same fields as the defendant healthcare provider in this case." This declaration of general experience does not adequately establish why Dr. Keepers would be qualified to render an opinion regarding the underlying facts and causation in this case. Similarly, Dr. Keepers' CV does not indicate board certification or special expertise in matters unique to the subject matter at issue or the conditions for which Galloway was being treated. Rather, Keepers has

13

professional training in anesthesiology, surgery, and pathology. We find nothing in his report or his CV demonstrates he has sufficient experience, knowledge, or training that might qualify him to render the opinion that HEB's alleged negligence in filling Galloway's Coreg prescription caused the injuries that led to her hospitalization. His overly broad and general references to writing prescriptions for patients and his statement regarding reliance upon pharmacists to accurately fill prescriptions would not demonstrate that he would be qualified to testify as to causation.

We acknowledge that a medical doctor such as Dr. Keepers may indeed be qualified to testify in a particular set of circumstances or facts about the standard of care of a pharmacist or pharmacy, the causation of a particular medical condition, or the interaction of certain medications. But, Dr. Keepers' report and his CV lack the specific detail necessary to establish that he is qualified to render an opinion regarding causation in this matter. For example, the report fails to state that he has treated patients with high blood pressure or similar conditions; that he has prescribed blood pressure medication to patients or that he has actually prescribed Coreg; that he is familiar with what happens generally to patients who fail to take their blood pressure medications; that he has treated patients with, or read peer-reviewed articles about, and has personal knowledge or experience or training

14

regarding, the side effects and symptoms of failing to take Coreg as prescribed; or that he is familiar with the pharmacology of Coreg and Ketoconazole. And, his CV does not chronicle a particular training, expertise, or certification relating to pharmacology, cardiology, or related fields. Rather, Dr. Keepers relies upon the information insert for Coreg, which he notes warns a patient as follows: "Do not stop taking COREG and do not change the amount of COREG you take without telling your doctor." And, he relies upon two documents from two of her treating physicians whose qualifications are not provided.

While we agree that it is not necessary for Dr. Keepers' report to satisfy the same standard as might be required for summary judgment or trial, the report must meet the basic requirements under section 74.351. We conclude that the trial judge abused his discretion in overruling HEB's objections and motion to dismiss with respect to the complaint about Dr. Keepers' qualifications to testify. Keepers' report fails to establish, either by knowledge, expertise, training, or experience, that he is qualified to render an opinion that the alleged mistake in the filling of the prescription caused the condition in question. *See Collini*, 280 S.W.3d at 465-66. Issue one is sustained.

DEFICIENCY RELATING TO CAUSATION

In addition to the foregoing, we further find the report is deficient because Dr. Keepers attributes causation to HEB, but he does so without providing the basis for his conclusion. The report fails to describe, for example, the potential physiological effects of taking Ketoconazole or of missing a dose of Coreg, whether the effects would be gradual or sudden, and how the conditions might manifest themselves in this particular patient. While Dr. Keepers does state that the admixing caused Galloway's blood pressure to spike, his report fails to provide any statement or detail as to how Galloway's assumed ingestion of an undetermined amount of Ketoconazole and presumed concomitant missed doses of Coreg would have contributed to any of her symptoms, and why such missed or admixed doses contributed to her condition. *See*, *e.g.*, *Gingrich v. Scarborough*, No. 09-09-00211-CV, 2010 WL 1711067, at \*\*2-3 (Tex. App.—Beaumont April 29, 2010, no pet.) (mem. op.) (not designated for publication) (Report was insufficient on causation where it stated that the cause of death was combined drug toxicity and pulmonary edema, but it failed to explain why combined drug toxicity occurred, how the combined drug toxicity related to pulmonary edema, or why it was fatal.).

As noted in *Collini*, the expert report must do more than merely make a conclusory statement that the defendant breached the standard of care and caused

16

an injury. 280 S.W.3d at 465-67. In *Collini*, the plaintiff sued her family physician for continuing to prescribe Reglan over an extended time, a practice that allegedly caused the plaintiff to develop "tardive dyskinesia[,]" which is "a condition that causes involuntary movement of the limbs, face, or tongue." *Id.* at 459-60 & n.1. The plaintiff produced an expert report from a board-certified physician who opined that the defendant breached the standard of care by continuing to prescribe the medication and by failing to closely monitor its use with the patient for known side effects, which included movement disorders recognized in the prescription information. *Id.* at 459-60. The court of appeals concluded that the expert report did not adequately address the link between the alleged breach of the standard of care and the injury that allegedly resulted to the patient because it did not provide any detail as to how the breach contributed to the injury. *Id.* at 467-68. And, the report did not indicate that the doctor had "any specific knowledge, experience, education, or training in assessing the causal relationship between the prolonged use of Reglan and tardive dyskinesia." *Id.* at 465. Keepers' report contains even less detail than the report in *Collini*. At this time, Dr. Keepers' report lacks a sufficient basis for us to conclude that he has the knowledge, training, or experience in treating patients with similar conditions and in prescribing Coreg or similar medications for his patients, that he is familiar with the side effects of, or

17

has knowledge of, the symptoms and conditions that would result from the admixing of the two medications, that there is a link between the alleged breach and the injury that allegedly resulted to Galloway, and how the admixing of the two medications contributed to the alleged injury.

## CONCLUSION

Considering the overall purpose of section 74.351, we conclude that the trial court committed an abuse of discretion in denying the motion to dismiss. Dr. Keepers' report does not show how he would be qualified to address the underlying medical conditions or how the alleged mis-filled prescription caused or contributed to the conditions. *Palacios*, 46 S.W.3d at 879; *Collini*, 280 S.W.3d at 465-67; *see also Bowie Mem'l Hosp.*, 79 S.W.3d at 52; *Farenik*, 243 S.W.3d at 173-77. Issue two is sustained.

We further conclude that although the report is deficient, the trial court should have the opportunity to grant a thirty-day extension. *See In re Buster*, 275 S.W.3d 475, 476-77 (Tex. 2008) (citing *Leland v. Brandal*, 257 S.W.3d 204, 208 (Tex. 2008)). Although we sustain HEB's challenge to the adequacy of Keepers' report as outlined above, we overrule HEB's issue to the extent it asks us to dismiss Galloway's suit. We remand the case for the trial court to give consideration to Galloway's request for a thirty-day extension of time under

section 74.351(c) to cure the deficiencies in Dr. Keepers' report. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c); *Scoresby v. Santillan*, 346 S.W.3d 546, 553-58 (Tex. 2011); *St. Luke's Sugar Land Hosp. v. Joseph*, Nos. 14-11-00932-CV, 14-11-00943-CV, 14-11-00997-CV, 2012 WL 2860687, at \*\*7-8 (Tex. App.—Houston [14th Dist.] July 12, 2012, no pet.) (mem. op.).

REVERSED AND REMANDED.

_____
LEANNE JOHNSON
Justice


Submitted on January 21, 2014
Opinion Delivered May 22, 2014

Before McKeithen, C.J., Horton and Johnson, JJ.