02-09-401-CV















 
 
 
 
 
 
 




 

 

 

 

 

 

                                                COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                                 NO.
2-09-401-CV

 

 

ANGELO L. OTERO, M.D.                                                                  APPELLANT

 

                                                             V.

 

MARY RICHARDSON                                                                           APPELLEE

 

                                                       ------------

 

               FROM
THE 17TH DISTRICT COURT OF TARRANT COUNTY

 

                                                       ------------

 

                                                      OPINION

 

                                                       ------------

I.  Introduction and Procedural Background

This is
the second interlocutory, expert-report appeal filed in this litigation.  Appellee Mary Richardson filed a health care
liability claim against Daniel L. Foster, D.O. and
Appellant Angelo L. Otero, M.D. 
Richardson timely filed and served the expert report and curriculum
vitae of Bryan S. Drazner, M.D.  Both Dr. Otero and Dr. Foster filed motions
to dismiss pursuant to chapter 74 of the civil practice and remedies code.  See Tex. Civ. Prac.
& Rem. Code Ann. ' 74.351
(Vernon 2005).  The trial court
sustained some of Otero=s objections to the report
relating to knee surgery performed by Dr. Otero, granted Richardson a
thirty-day extension of time to allow her to cure these defects in Dr. Drazner=s report
as to Dr. Otero, and did not rule on Dr. Otero=s motion
to dismiss.   The trial court denied Dr.
Foster=s motion
to dismiss.  Both Dr. Otero and Dr.
Foster perfected an appeal.

We
affirmed in part and reversed in part the trial court=s denial
of Dr. Foster=s motion to dismiss.  See Foster v. Richardson, 303 S.W.3d 833, 845B46 (Tex.
App.CFort
Worth 2009, no pet.).  We dismissed, on
Dr. Otero=s motion, his attempted appeal from
the trial court=s order granting Richardson a
thirty-day extension of time to file an amended report concerning the sustained
objections relating to knee surgery performed by Dr. Otero.

After Dr.
Otero=s appeal
was dismissed, Richardson did not file an amended report in the trial court;
she decided to proceed against Dr. Otero only on her claims on which Dr. Otero=s
objections had been overruled.  Thirty
days expired, and Dr. Otero filed a second motion to dismiss in the trial
court.  The trial court conducted a
hearing and granted Dr. Otero=s motion
to dismiss in part, ruling,

This Court had previously sustained Defendant Angelo L. Otero, M.D.=s Objections relating to
knee surgery performed, including his objections to qualifications for Dr. Drazner to opine on same in the Report of Byran S. Drazner, M.D.  This Court finds that Plaintiff was given an
opportunity to cure the deficiencies as related to these objections and failed
to do so.  Accordingly, Defendant Angelo
L. Otero, M.D.=s Second Motion to Dismiss is GRANTED IN PART as
follows all of Plaintiff=s claims related to the
performance of knee surgery are hereby DISMISSED WITH PREJUDICE.

 

Dr. Otero perfected this appeal,
challenging the trial court=s failure
to dismiss the entirety of Richardson=s claims
against him.  In his sole issue on
appeal, Dr. Otero queries, ADid the
trial court abuse its discretion in overruling [Dr.] Otero=s
objections to the report of Bryan Drazner, M.D.
regarding the allegation of failure to properly diagnose and treat a fractured
leg, and err in denying in part [Dr.] Otero=s Motion
to Dismiss?@ 

II.  Factual Background

The
following is the factual background as set forth in our prior opinion:

Appellee Mary Richardson injured her left leg
while working for an airline in December 2006. 
Hospital personnel immobilized her knee, initially told her that she had
sustained a knee sprain, and instructed her to see her primary physician for
treatment.  Richardson=s primary physician
referred her to Dr. Angelo Otero for an orthopedic consultation.  On January 22, 2007, Dr. Otero diagnosed
Richardson with tears of her anterior cruciate
ligament (ACL) and lateral meniscus in her left knee.  On February 15, Dr. Otero surgically
reconstructed that knee; 
he then released her for light duty at work on February 26 and
for full duty on May 14.

 

On June 21, because she was still experiencing
pain in her leg, Richardson saw Dr. Foster, who diagnosed her as having complex
regional pain syndrome in her left leg and recommended that she participate in
physical therapy.  However, on July 27,
Richardson saw an orthopedic surgeon whose diagnostic tests revealed that
Richardson had a partially‑healed ankle
fracture.  To treat the fracture, the
surgeon had to rebreak Richardson=s ankle and insert metal
hardware into it. Richardson asserts that her leg is disfigured and that her
ankle will never function normally because of Dr. Otero=s and Dr. Foster=s failures to timely
diagnose and treat the fracture.

 

Foster, 303 S.W.3d at 836.

 








III.  Standard of Review

We likewise
utilize the same standard of review as that set forth in our prior opinion.

We review a trial court=s denial of a motion to
dismiss under section 74.351 for an abuse of discretion.  See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d
873, 875 (Tex. 2001); Collini v. Pustejovsky, 280 S.W.3d 456,
461 (Tex. App.CFort Worth 2009, no pet.) (op.
on remand); Moore v. Gatica, 269 S.W.3d 134, 139 (Tex. App.CFort Worth 2008, pet.
denied) (op. on remand).  We also review  a trial court=s decision on whether a
physician is qualified to offer an expert opinion in a health care liability
claim under an abuse of discretion standard. 
Collini, 280 S.W.3d at 461; Moore, 269 S.W.3d
at 139.

 

To determine whether a trial court abused its
discretion, we must decide whether the trial court acted without reference to
any guiding rules or principles;  in other words, we must decide whether
the act was arbitrary or unreasonable.  Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238,
241B42 (Tex. 1985), cert.
denied, 476 U.S. 1159 (1986); see Collini,
280 S.W.3d at 461. 
Merely because a trial court may decide a matter within its discretion
in a different manner than an appellate court would in a similar circumstance
does not demonstrate that an abuse of discretion has occurred.  Downer, 701 S.W.2d at 242; Collini,
280 S.W.3d at 461.

 

Foster, 303 S.W.3d at 837.

IV.  The Statutory Requirements of Expert
Reports

We recite
the statutory requirements of expert reports as set forth in our pior opinion in this litigation.

A plaintiff must serve an expert report that
addresses liability and causation on each defendant no later than the 120th day
after the plaintiff files a health care liability claim.  Tex. Civ. Prac. & Rem. Code Ann. '
74.351(a), (j).  If an expert
report has not been served on a defendant within the 120‑day
period, then on the motion of the affected defendant, the trial court must
dismiss the claim with prejudice and award the defendant reasonable attorney=s fees and costs.  Id. ' 74.351(b).  A report Ahas not been served@ under the statute when it
has physically been served but a court finds it deficient.  See id. ' 74.351(c);
Leland v. Brandal, 257 S.W.3d
204, 207 (Tex. 2008); Lewis, 253 S.W.3d at 207B08.

 

A report is deficient (therefore subjecting a
claim to dismissal) when it Adoes not represent an objective good faith effort
to comply with the [statute=s] definition of an expert report.@  Tex. Civ. Prac. & Rem. Code Ann. '
74.351(l); Collini, 280 S.W.3d at 461B62.  While the expert report Aneed not marshal all the plaintiff's proof,@ it must provide a fair
summary of the expert's opinions as to the applicable standards of care, the
manner in which the care rendered by the physician failed to meet the
standards, and the causal relationship between that failure and the injury,
harm, or damages claimed.  Tex. Civ. Prac. & Rem. Code
Ann. ' 74.351(r)(6); Palacios, 46 S.W.3d
at 878; Collini, 280 S.W.3d
at 462.

 

To
qualify as a good faith effort, the report must Adiscuss
the standard of care, breach, and causation with sufficient specificity to
inform the defendant of the conduct the plaintiff has called into question and
to provide a basis for the trial court to conclude that the claims have merit.@  Palacios, 46 S.W.3d
at 875; Benish v. Grottie,
281 S.W.3d 184, 194 (Tex. App.CFort
Worth 2009, pet. denied).  A report does
not fulfill this requirement if it merely states the expert=s
conclusions or if it omits any of the statutory requirements.  Palacios, 46 S.W.3d at 879; Benish, 281
S.W.3d at 194.

Foster, 303 S.W.3d at 837.

V.  The Facts Alleged in Dr. Drazner=s Report

Richardson
did not file an amended report to cure the deficiencies in Dr. Drazner=s report
concerning the knee surgery performed by Dr. Otero; Richardson does not
challenge the trial court=s dismissal of her claims against
Dr. Otero based on or relating to her knee surgery.  Thus, the issue before us is whether Dr. Drazner=s report
is sufficient to satisfy the statutory elements of an expert report concerning
Richardson=s claim that Dr. Otero failed to
timely diagnose and treat her ankle fracture.

The report
we review now for adequacy as to Dr. Otero, an orthopedic surgeon, is the exact
same report we previously reviewed for adequacy as to Dr. Foster, also an
orthopedic surgeon.  According to his
report, Dr. Drazner physically evaluated Richardson
on July 26, 2007, and he became concerned about aspects of her prior care at
that time.  Richardson made it clear to
Dr. Drazner Athat she
[had] complained to Dr. Otero about pain and swelling in the left lower leg and
ankle, which far exceeded any minor knee discomfort and that her complaint went
ignored and unaddressed.@ 
Dr. Otero failed to diagnose Richardson=s leg
fracture and instead performed knee surgery. 
The report continues,

The Standard of Care Applicable to both Dr. Otero and Dr. Foster:

 

It is the standard of care for a physician who is
examining a patient=s leg injury to perform a
thorough [orthopedic] examination in order to determine the nature and extent
of the injury.  It is also the standard
of care when examining a leg injury, to perform full range of motion testing regarding
the injured leg, including the knee, the ankle, and the foot, and to detail the
findings of the examination. . . . 

 

Breach of Standard of Care:

 








From their records, neither Dr. Otero nor Dr.
Foster performed a thorough examination of Ms. Richardson=s left leg, including her
ankle and foot. . . .  Without a complete
[orthopedic] examination, including full range of motion testing, and the
obtainment of appropriate objective diagnostic tests on Ms. Richardson=s ankle and foot, an
accurate diagnosis was not possible.  Dr.
Otero apparently assumed Ms. Richardson=s injury was to her left knee because she had
undergone left knee surgery approximately five years earlier.  Dr. Otero=s
assumption was not supported by his examination nor by objective
diagnostic tests.  Although Ms.
Richardson may have sprained her knee, it was later discovered (not by
Dr. Otero or Dr. Foster) that Ms. Richardson had fractured her left distal
fibula.

 

Results of Defendants= Breach of the Standard of Care:

 

. . . If Dr. Otero and Dr. Foster had performed a
complete examination of Ms. Richardson=s left leg, including her tibula/fibula,
ankle and foot, and/or if they had referred Ms. Richardson for a second
opinion, while treating her conservatively to determine the true nature of her
injury, an unnecessary knee surgery would not have been performed.  Moreover, due to the physicians= failure to correctly
diagnose Ms. Richardson=s injury, her fracture
went completely undetected for over seven months and the patient was subjected
to a surgery for open reduction and initial fixation of the lateral mellolus, left pelvic iliac crest bone graft, a prolonged
period of pain and requirement for exhaustive narcotic enalyens,
usage of a bone growth stimulator and another surgery to remove painful
surgical hardware, a prolonged period of disability, and . . . loss of hind
foot motion, . . . as well as moderate chronic pain.  As a result, it is my opinion that Ms. Richardson
will suffer from impairments that could have been prevented had her injury been
properly and timely diagnosed and treated before the fracture had healed
incorrectly failed to heal, moved to non‑union, and required further
exhaustive care.[[1]]

  

VI.  Dr. Otero=s
Appellate Complaints

 

A.  Dr. Drazner=s Report Includes Adequate


Standard of Care and Breach Opinions

Dr. Otero
raises several arguments challenging the adequacy of Dr. Drazner=s report Aas to the
allegation of failure to properly diagnose and treat a fractured leg.@ Dr.
Otero claims that A[t]here is no standard of care or
alleged breach stated as to [Dr.] Otero and the remaining allegation of failure
to properly diagnose and treat a fractured leg@ and that
Dr. Drazner=s report Afails to
adequately state a standard of care applicable to [Dr.] Otero or an alleged
breach of such standard by [Dr.] Otero with regard to the allegation of failure
to properly diagnose and treat a fractured leg.@

An expert report=s statements
concerning the standard of care and breach need only identify what care was
expected and not given with such specificity that inferences need not be
indulged to discern them.  Benish,
281 S.W.3d at 198.  A Afair
summary@ of the
standard of care and how it was breached is all that is required.  Palacios, 46 S.W.3d
at 880 (explaining that Aa >fair
summary= is
something less than a full statement of the applicable standard of care and how
it was breached@).  Dr. Drazner=s report,
as quoted above, contains a specific section titled, AStandard
of Care Applicable to Dr. Otero,@ and
another section titled, ABreach of Standard of Care.@  These sections explain that the standard of
care required Dr. Otero to conduct a thorough examination when he examined
Richardson Ain order to determine the nature
and extent of the injury,@ including Afull
range of motion testing regarding the injured leg, including the knee, the ankle,
and the foot, and to detail the findings of the examination.@  The section on breach explains that Dr. Otero
breached the standard of care by not conducting the thorough examination
dictated by the standard of care.  These
allegations constitute a fair summary of the standard of care applicable to Dr.
Otero and how he breached that standard; the allegations are sufficient to
identify the care that was expected but not given by Dr. Otero and to permit
the trial court to conclude that the claim has merit.  See, e.g., Baylor Coll. of Med. v. Pokluda, 283 S.W.3d 110, 121B23 (Tex.
App.CHouston
[14th Dist.] 2009, no pet.) (rejecting argument that
expert report failed to adequately set forth standard of care and breach); Palafox v. Silvey,
247 S.W.3d 310, 318B19 (Tex.
App.CEl Paso
2007, no pet.) (same); Patel v. Williams, 237 S.W.3d 901, 905 (Tex. App.CHouston
[14th Dist.] 2007, no pet.) (same).  The trial court did not abuse its discretion
by determining that Dr. Drazner=s report
adequately set forth the standard of care applicable to Dr. Otero in his
examination of Richardson=s injured leg and adequately set
forth how Dr. Otero breached that standard. 
  

B.  Dr. Drazner=s Report Not Inadequate
for Including Standard of Care,

Breach, and Causation Opinions
for Dr. Foster and Dr. Otero

(Both Orthopedic Surgeons)
in Same Sentences

 

 








Next, Dr.
Otero contends that Dr. Drazner=s report
is inadequate because it Afails to address the conduct of
[Dr. Otero and Dr. Foster, both of whom are orthopedic surgeons] individually
and thus is conclusory@ as to
standard of care, breach, and causation. 
Dr. Foster made this exact argument in his appeal.  See Foster, 303 S.W.3d at 843 (holding that ADr. Drazner=s report
is not deficient merely because it contains some collective statements
regarding actions that both [Dr. Foster and Dr. Otero] should have taken while
they independently cared for Richardson@).  Dr. Otero argues that our holding above does
not apply to him because, unlike Dr. Drazner=s report
concerning Dr. Foster, Dr. Drazner=s report
concerning him does not contain Aany
independent explanation as to why [Dr.] Otero should have performed a range of
motion test.@ 
But Dr. Drazner=s report
does explain why Dr. Otero should have performed a range of motion test; he
explains that the standard of care when a physician examines a
patient for a leg injury is to perform a thorough orthopedic examination and to
perform full range of motion testing regarding the injured leg, including the
knee, ankle, and foot, and he explains that Dr. Otero is a physician who
examined Richardson for a leg injury but did not perform  full range of motion testing.  For this reason, as well as because both Dr.
Otero and Dr. Foster are orthopedic surgeons, and for the reasons set forth in
our prior opinion, we hold that the trial court did not abuse its discretion by
failing to find Dr. Drazner=s report
inadequate or conclusory on the statutory elements of
standard of care, breach, and causation simply because the report contains some
collective statements concerning Dr. Foster and Dr. Otero regarding standard of
care, breach, and causation.  See id.

C.  Dr. Drazner=s Report
Includes Adequate Causation Opinions

Next, Dr.
Otero contends that Dr. Drazner=s report Afails to
explain the basis of his causation opinions and such opinions are factually
unsupported.@ 
Dr. Otero alleges that Dr. Drazner=s report Anever
explains how or why Richardson=s
injuries resulted from the alleged negligent acts.@  But Dr. Drazner=s report
expressly states under the heading, AResults
of Defendants= Breach of the Standard of Care,@ that 

[b]y failing to perform a complete examination of Ms. Richardson=s left leg which was
injured, both Dr. Otero and Dr. Foster failed to diagnose Ms. Richardson=s left fibula fracture. .
. . [D]ue to the physicians= failure to correctly
diagnose Ms. Richardson=s injury, her fracture
went completely undetected for over seven months and the patient was subjected
to a surgery for open reduction and initial fixation of the lateral mellolus, left pelvic iliac crest bone graft, a prolonged
period of pain and requirement for exhaustive narcotic enalyens,
usage of a bone growth stimulator and another surgery to remove painful
surgical hardware, a prolonged period of disability, and . . . loss of hind
foot motion . . . and chronic pain.

 

These opinions by Dr. Drazner are amply sufficient to satisfy the statutory
causation element required to be included in expert reports.  See, e.g., In re Barker,
110 S.W.3d 486, 489B91 (Tex.
App.CAmarillo
2003, orig. proceeding) (holding expert report adequately addressed causal
connection between defendant=s delay
in diagnosis and plaintiff=s
damages), mand. denied,
141 S.W.3d 144 (Tex. 2004); see also Sides v.
Guevara, 247 S.W.3d 293, 301B02 (Tex.
App.CEl Paso
2007, no pet.).

D.  Dr. Drazner is Qualified to Offer Opinions in Report

Finally,
Dr. Otero claims that Dr. Drazner=s report
fails to show that he is qualified as an expert on the standard of care and
causation applicable to Richardson=s health
care liability claim.  The determination of a doctor=s
qualifications to provide an expert report must be made on the basis of
the contents of the report and his curriculum vitae.  Bowie Mem=l Hosp.
v. Wright, 79 S.W.3d 48, 52 (Tex. 2002).  With respect to a person giving opinion
testimony regarding whether a physician departed from accepted standards of
medical care, an expert must (1) be practicing medicine at the time of the
testimony or at the time the claim arose;  (2) have knowledge of accepted
standards of medical care for the diagnosis, care, or treatment of the
condition involved in the claim; and (3) be qualified on the basis of training
or experience to offer an expert opinion regarding the standard of care.  See Tex. Civ. Prac.
& Rem. Code Ann. ' 74.351(r)(5)(A),  '
74.401(a) (Vernon 2005).  A physician is Aqualified
on the basis of training or experience@ if the
physician is board certified or has other substantial training or experience in
an area of medical practice relevant to the claim and is actively practicing
medicine in rendering medical care services relevant to the claim.  Id. '
74.401(c).

An expert
is qualified to give opinion testimony about the causal relationship between the
injury claimed and the alleged departure from the applicable standard of care
if he is Aotherwise qualified to render
opinions on such causal relationship under the Texas Rules of Evidence.@  Id. ' 74.351(r)(5)(C), '
74.403(a) (Vernon 2005).  The Texas Rules
of Evidence provide that A[i]f
scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a
fact in issue, a witness qualified as an expert by knowledge, skill,
experience, training, or education may testify thereto in the form of an
opinion or otherwise.@ 
Tex. R. Evid. 702; see
also Roberts v. Williamson, 111 S.W.3d 113, 121B22 (Tex.
2003) (recognizing that while medical license does not automatically qualify
holder to testify as expert on every medical question, test is not whether
expert practices in a particular field of medicine but rather whether offering
party has established that expert has knowledge, skill, experience, training, or
education regarding specific issue before court that would qualify expert to
give opinion on particular subject, and holding that based on qualifications
and experience, pediatrician was qualified to opine on cause and effect of
neurological injuries).

We review
a trial court=s determination that an expert is
qualified under an abuse of discretion standard.  Benish, 281 S.W.3d at 198B99;
Mem=l Hermann
Healthcare Sys. v. Burrell, 230 S.W.3d
755, 757 (Tex. App.CHouston
[14th Dist.] 2007, no pet.) (citing Broders v. Heise,
924 S.W.2d 148, 151B52 (Tex.
1996)).

Concerning
Dr. Drazner=s
qualifications, his report states, in part:

I have been a practicing physician in Texas for 18
years.  My practice specialty is Physical
Medicine and Rehabilitation with a secondary speciality
in Occupational Medicine.  My practice
consists of examining, evaluating, diagnosing and treating injured patients,
primarily those who have suffered ortho[pedic] injuries.  Consequently, I have treated approximately
20,000 patients with ortho[pedic] injuries and performed
several hundred thousand ortho[pedic]
examinations, and I am well familiar with the standard of care that must be
followed by any physician who is examining a patient who has sustained an
injury. 

 

Dr. Drazner=s curriculum
vitae indicates that he currently practices medicine in Dallas,
Texas specializing in Physical Medicine and Rehabilitation, and Pain
Management.

Thus, Dr.
Drazner=s report
and curriculum vitae establish that he was practicing medicine at the time
Richardson was treated by Dr. Otero and at the time he provided his report;
that he possesses knowledge of accepted standards of medical care for the
diagnosis, care, or treatment of a person with a leg injury; and that based on
his eighteen years of experience, he is qualified to offer an expert opinion
regarding the standard of care applicable to a physician examining a patient
with a leg injury.  See Tex. Civ. Prac. & Rem. Code Ann. '' 74.351(r)(5)(A), .401(a). 
Thus, Dr. Drazner=s report
and curriculum vitae establish that he met the statutory requirements to be
qualified to offer an opinion on the applicable standard of care and its
breach.  See id. '' 74.351(r)(5)(A), .401(a)(2)B(3).  The trial court did not abuse its discretion
by finding Dr. Drazner qualified to do so.

Dr. Drazner=s report
and curriculum vitae also establish that he was qualified to opine on the issue
of causation because he is qualified to render such an opinion under the Texas
Rules of Evidence.  See id. '' 74.351(r)(5)(C), .403(a); Tex. R. Evid.
702.  Dr. Drazner
is a medical doctor who practices physical medicine and rehabilitation.  He has performed several hundred thousand
orthopedic examinations, and he has treated approximately 20,000 patients with
orthopedic injuries.  These credentials
and this experience, set forth within the four corners of Dr. Drazner=s report
and curriculum vitae, sufficiently establish that he is qualified to render an
opinion on causation in this case.  See
Tex. Civ. Prac. & Rem. Code Ann. '' 74.351(r)(5)(C), .403(a); Tex. R. Evid.
702; see, e.g., Mosely v. Mundine, 249 S.W.3d 775, 779B80 (Tex.
App.CDallas
2008, no pet.) (concluding that expert had the knowledge, skill, experience,
training, or education regarding specific emergency room physician=s scope
of practice and holding that expert was therefore qualified to render an
opinion on causation under section 74.351(r)(5)).

Dr. Otero
does not point out any specific defect concerning Dr. Drazner=s
qualifications.  Instead, he argues that A[i]t is difficult to assess what [Dr.] Drazner=s
qualifications are with respect to the remaining claim [that is, Richardson=s claim
that Dr. Otero failed to properly diagnose and treat her fractured leg] against
[Dr.] Otero because [Dr.] Drazner does not state a
standard of care or breach by [Dr.] Otero on which [Dr.] Drazner
may be judged to be qualified.@  We have already addressed Dr. Otero=s contention
that Dr. Drazner=s report
contains no standard of care or breach opinions as to Dr. Otero.  We do not rehash that issue here.  For the reasons set forth above, the trial
court did not abuse its discretion by concluding that Dr. Drazner
was qualified to render opinions on the standard of care, its breach, and on
causation concerning Dr. Otero=s alleged
negligence in failing to properly diagnose and treat Richardson=s leg
fracture.

Having
addressed the arguments presented by Dr. Otero in connection with his sole
issue presented, we overrule Dr. Otero=s sole
issue.

VII.  Conclusion

Having
overruled Dr. Otero=s sole issue, we affirm the trial
court=s order
denying in part Dr. Otero=s second motion to dismiss.  

 

SUE WALKER

JUSTICE

 

PANEL: LIVINGSTON, C.J.; DAUPHINOT and
WALKER, JJ.

 

DELIVERED: September 30, 2010











[1]The portion of the report
following the stricken phrase, Ahad healed correctly,@ was handwritten.