**Reversed and Remanded and Opinion Filed June 8, 2016**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-00806-CV

**METHODIST HOSPITALS OF DALLAS A/K/A/ METHODIST HEALTH SYSTEM D/B/A METHODIST CHARLTON MEDICAL CENTER, Appellant**

**V.**

**JANICE WINN, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF DORIS HUNT, Appellee**

**On Appeal from the 95th Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-14-08645**

## OPINION

Before Justices Bridges, Francis, and Myers
Opinion by Justice Bridges

Methodist Hospitals of Dallas, a/k/a Methodist Health System d/b/a Methodist Charlton Medical Center (Methodist) appeals the trial court's order denying its motion to dismiss the underlying medical malpractice case after Janice Winn, individually and on behalf of the estate of Doris Hunt, filed an amended expert report. In a single issue, Methodist argues the trial court abused its discretion in denying Methodist's motion to dismiss. We reverse the trial court's order denying Methodist's motion to dismiss and remand this case for further proceedings consistent with this opinion.

In August 2014, Winn sued Methodist alleging Winn's mother, Doris Hunt, received hospital treatment from Methodist in August 2012. Winn's petition alleged Hunt suffered

"injury, pain and suffering and mental anguish" after she was admitted to Methodist and was "neglected" at Methodist following a surgical procedure. As a result, the petition alleged, Hunt died. In November 2014, Winn filed an expert report and curriculum vitae of Wright W. Singleton, M.D. The expert report, among other things, indicated that seventy-five-year-old Hunt was a patient at Methodist from August 9 to August 25, 2012. At that time, Hunt weighed between 272 and 300 pounds. Hunt was discharged via ambulance with Winn "at bedside." Nothing in the record shows the hospital knew Hunt had decubitus ulcers when she was discharged. Nevertheless, the report alleged that, after her release from Methodist, she was "unable to recover fully from her decubitus ulcers which contributed to her later developing sepsis." The report alleged "there was inadequate documentation and investigation of tissue health in the surrounding region prior to hospital release." As a result, Hunt "developed severe terminal infection and expired" on November 7, 2012.

In December 2014, Methodist filed objections to the expert report and a motion to dismiss under chapter 74 of the civil practice and remedies code. Following a hearing in February 2015, the trial court determined the expert report was deficient but denied Methodist's motion to dismiss and gave Winn thirty days to cure the deficiencies in the expert report. Winn filed an amended expert report, and Methodist filed objections to the amended report and a second motion to dismiss. During a hearing on the second motion to dismiss, the trial judge heard arguments from both sides and called the expert report a "horrible opinion" but stated he was "just trying not to dismiss what may very well be a meritorious action." Following the hearing, the trial court entered an order denying Methodist's motion to dismiss. This appeal followed.

In a single issue, Methodist argues the trial court erred in denying its motion to dismiss. Specifically, Methodist contends Singleton was not qualified to render an opinion on the

appropriate standard of care and provided only conclusory opinions on causation. We review the trial court's decision regarding the adequacy of an expert report under an abuse of discretion standard. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001). In reviewing the trial court's decision, we may not substitute our judgment for that of the trial court when reviewing factual matters or matters committed solely to the trial court's discretion. *See Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992). "Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred." *Palladian Bldg. Co. v. Nortex Found. Designs, Inc.*, 165 S.W.3d 430, 433 (Tex. App.—Fort Worth 2005, no pet.). "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles." *Bowie Mem'l Hosp.*, 79 S.W.3d at 52. A trial court also abuses its discretion if it fails to analyze or apply the law correctly. *Walker*, 827 S.W.2d at 839–40.

A health care liability claimant must provide each defendant physician and health care provider with an expert report within a specified time. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West Supp. 2015). The report serves a two-fold purpose: (1) to inform the defendant of the specific conduct the plaintiff has called into question; and (2) to provide a basis for the trial court to conclude the plaintiff's claims have merit. *Palacios*, 46 S.W.3d at 879; *see also Bowie Mem'l Hosp.*, 79 S.W.3d at 52. The statute defines "expert report" as follows:

> a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (West Supp. 2015). The defendant may file a motion challenging the adequacy of the report. *Id.* § 74.351(*l*).

The trial court "shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." *Id.* § 74 .351(l ). When determining whether the report represents a good-faith effort to comply with the statute, the trial court's inquiry is limited to the four corners of the report. *See Wright*, 79 S.W.3d at 53; *Palacios*, 46 S.W.3d at 878. To constitute a "good-faith effort," the report "must discuss the standard of care, breach, and causation with sufficient specificity to inform the defendant of the conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit." *Palacios*, 46 S.W.3d at 875. While the expert report "need not marshal all the plaintiff's proof," it must provide a fair summary of the expert's opinions as to the applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (West Supp. 2015); *Palacios*, 46 S.W.3d at 875, 878. In determining the adequacy of an expert report, the trial court reviews the pleadings to determine the claims alleged and whether the report addresses those claims. *See Windsor v. Maxwell*, 121 S.W.3d 42, 51 (Tex. App.—Fort Worth 2003, pet. denied).

A physician is qualified to submit an expert report on the causal relationship between a departure from the standard of care and an injury when he would otherwise be qualified to address causation under the Texas Rules of Evidence. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5)(C) (West Supp. 2015). A person may qualify as an "expert" on the question of whether the health care provider departed from the accepted standard of care if the person (1) is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider; (2) has knowledge of accepted standards of care

for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care. *Id.* § 74.402(b) (West 2011). To be qualified on the basis of training or experience, the person must be certified or have other substantial training or experience in an area of health care practice relevant to the claim and must be actively practicing health care in rendering health care services relevant to the claim. *Id.* § 74.402(c) (West 2011).

Every licensed medical doctor is not automatically qualified to testify as an expert on every medical question, and the proponent of that testimony must show that the expert possesses special knowledge regarding the matter on which he proposes to give an opinion. *Ehrlich v. Miles*, 144 S.W.3d 620, 624–26 (Tex. App.—Fort Worth 2004, pet. denied). Accordingly, the offered report must demonstrate that the expert has "'knowledge, skill, experience, training, or education regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject.'" *Id.* (quoting *Roberts v. Williamson*, 111 S.W.3d 113, 121 (Tex. 2003)). The expert report must do more than merely allege that the expert is a medical doctor in order to render opinions about the standard of care and causation, and the reviewing court cannot fill in gaps in a report by drawing inferences. *See, e.g., Collini v. Pustejovsky*, 280 S.W.3d 456, 465–67 (Tex. App.—Fort Worth 2009, no pet.) (trial court erred in denying physician's motion to dismiss because expert report did not demonstrate expert qualified to testify regarding causation).

Here, Singleton's curriculum vitae attached to his amended expert report stated, among other things, that he was currently "Medical Director Star Medical (a fully operational urgent care provider) January 2010 to 2014" and had been an emergency room physician at University of Texas Southwestern University Hospital from 1992 to 1994. The report stated Singleton was

in private practice "1994 to present." The amended report first discusses the history of Hunt's injury and treatment for five pages. Under the heading "Medical Opinion," the report stated:

> As a result of my training and experience beginning as a hospital orderly, into medical school residence, emergency room physician, private practice and health care facility management and supervision, I am familiar with the standard of care for the movement and transport of patients.

After expressing his opinion that Lancaster paramedics and Methodist breached the standard of care, Singleton again referred to his qualifications:

> Since my training and experience also involves taking care of the elderly and paralyzed as a hospital orderly, during medical school and residency, private practice and health care facility management and supervision, I am familiar with the standard of care for bed bound patients.

Winn's petition alleged Methodist failed to properly treat Hunt; failed to inform Hunt of her true physical state after Methodist treated her; failed to recognize, diagnose, and treat Hunt's bed sores and/or infection; failed to limit the likelihood of infection and injury; failed to observe significant changes in Hunt's condition and document those changes on Hunt's medical chart; failed to properly supervise its employees and staff; and provided inferior product and/or treatment to Hunt. Singleton's curriculum vitae shows he worked as an urgent care provider from 2010 to 2014. Winn's claims against Methodist focus on the hospital's treatment and monitoring of Hunt and supervision of the hospital's employees and staff. The record does not show Singleton was actively practicing health care in rendering health care services relevant to Winn's claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(c) (West 2011). We are not permitted to fill in gaps in Singleton's report by drawing inferences. *See Collini*, 280 S.W.3d at 465–67. Singleton's expert report and his curriculum vitae fail to show he had knowledge, skill, experience, training, or education regarding the specific issues Winn raised. *See Ehrlich*, 144 S.W.3d at 624–26.

Further, Singleton's expert report was not sufficient as to causation. Singleton's expert report stated Methodist's breach of the standard of care for bed-bound patients, "the resulting decubitus ulcers, bed sores, improper wound care and resulting sepsis is within reasonable medical certainty a causal relationship between that failure and the injury." This conclusory statement does not establish a causal relationship between Methodist's treatment of Hunt in August 2012 and her death on November 7, 2012, nearly ten weeks later. A report that merely states the expert's conclusions about the standard of care, breach, and causation does not fulfill the purposes of the report: to inform the defendant of the specific conduct the plaintiff has called into question and provide a basis for the trial court to conclude that the claims have merit. *Palacios*, 46 S.W.3d at 879. Under these circumstances, we conclude the trial court erred in denying Methodist's motion to dismiss. *See id.* We sustain Methodist's issue.

We reverse the trial court's order denying Methodist's motion to dismiss and remand this case for further proceedings consistent with this opinion.

/David L. Bridges/

DAVID L. BRIDGES

150806F.P05

JUSTICE

–7–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

METHODIST HOSPITALS OF DALLAS
A/K/A/ METHODIST HEALTH SYSTEM
D/B/A METHODIST CHARLTON
MEDICAL CENTER, Appellant

No. 05-15-00806-CV          V.

JANICE WINN, INDIVIDUALLY AND
ON BEHALF OF THE ESTATE OF DORIS
HUNT, Appellee

On Appeal from the 95th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-14-08645.
Opinion delivered by Justice Bridges.
Justices Francis and Myers participating.

        In accordance with this Court's opinion of this date, the order of the trial court is
**REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent
with this opinion.

        It is **ORDERED** that appellant METHODIST HOSPITALS OF DALLAS A/K/A/
METHODIST HEALTH SYSTEM D/B/A METHODIST CHARLTON MEDICAL CENTER
recover its costs of this appeal from appellee JANICE WINN, INDIVIDUALLY AND ON
BEHALF OF THE ESTATE OF DORIS HUNT.


Judgment entered June 8, 2016.