**REVERSE and REMAND; and Opinion Filed July 21, 2017.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-01124-CV

**STEPHEN COURTNEY, M.D. AND PLANO ORTHOPEDICS
SPORTS MEDICINE AND SPINE CENTER, P.A., Appellants
V.
CHRISTEL PENNINGTON, INDIVIDUALLY
AND AS AN HEIR AND REPRESENTATIVE OF THE ESTATE
OF STEVEN PAUL PENNINGTON, DECEASED, Appellee**

**On Appeal from the 162nd Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-16-03386**

## MEMORANDUM OPINION

Before Justices Francis, Brown, and Schenck
Opinion by Justice Brown

In this interlocutory appeal, Stephen Courtney, M.D. and Plano Orthopedics Sports Medicine and Spine Center, P.A. appeal the trial court's order denying their objections to Christel Pennington's Chapter 74 expert reports and denying their motion to dismiss Pennington's wrongful death case for failure to serve adequate expert reports. We reverse and remand to the trial court for further proceedings.

Dr. Courtney performed spinal surgery on Pennington's husband Steven Pennington twice, once in March 2012, and once in July 2015. During the July 2015 procedure, Steven suffered cardiac arrest and died. In March 2016, Pennington, individually and as an heir and representative of Steven's estate, sued Dr. Courtney and his professional association (collectively

"Dr. Courtney") for negligence and gross negligence that allegedly occurred in connection with the 2012 surgery. On behalf of Steven's estate, Pennington sought survival damages for Steven's mental anguish and pain and suffering, among other damage elements, following the 2012 surgery until his death. Pennington also sought wrongful death damages for the loss of her husband, as well as exemplary damages.

Pursuant to Chapter 74 of the civil practice and remedies code, Pennington served Dr. Courtney with the expert report of Dr. George Wharton. Dr. Courtney objected to the expert report for various reasons. Pennington then served Dr. Courtney with a supplemental expert report from Dr. Wharton and a new expert report from Dr. Mark Entman. Dr. Courtney objected to these new reports and moved to dismiss Pennington's claims with prejudice for failure to serve sufficient expert reports. After a hearing, the trial court overruled Courtney's objections to the reports and denied the motion to dismiss. This appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (West Supp. 2016) (permitting appeal from interlocutory order that denies relief sought by motion under section 74.351(b)).

In this appeal, Dr. Courtney contends the trial court abused its discretion in overruling the objections to the expert reports and in denying the motion to dismiss Pennington's wrongful death claim.[1] Dr. Courtney maintains that Pennington's expert reports were insufficient because they fail to (1) articulate the standards of care for the 2015 surgery; (2) articulate any breach of the standard of care for the 2015 surgery; and (3) sufficiently address causation. Pennington responds that the first two complaints about her expert reports are irrelevant because she has not alleged that any negligence during the 2015 surgery caused her husband's death. Her theory is that her husband underwent a second surgery, during which he died, only because Dr. Courtney was negligent in performing the first surgery. We agree with Pennington that the sole issue in

---

[1] Dr. Courtney does not complain about the trial court's actions regarding Pennington's survival claim.

this appeal is whether her expert reports adequately address whether negligence during the 2012 surgery caused her husband's death in 2015.

When asserting a health care liability claim, a claimant must comply with Chapter 74. *Stockton v. Offenbach*, 336 S.W.3d 610, 614 (Tex. 2011). Section 74.351(a) provides that a claimant shall serve, within 120 days after the defendant's original answer is filed, an expert report. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West Supp. 2016). An expert report is defined as:

> a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding the applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

*Id.* § 74.351(r)(6). A trial court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after a hearing, that the report does not represent an objective good faith effort to comply with this definition. *Id.* § 74.351(*l*). A claimant may use multiple expert reports to address the different issues that may arise in a health care liability claim, such as liability and causation. *Id.* § 74.351(i).

We review the trial court's decision regarding the adequacy of an expert report under an abuse of discretion standard. *Methodist Hosps. of Dallas v. Winn*, 496 S.W.3d 148, 150 (Tex. App.—Dallas 2016, no pet.). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Id.* A trial court also abuses its discretion if it fails to analyze or apply the law correctly. *Id.*

In his expert reports, Dr. Wharton, an orthopedic surgeon, provided a history of Steven's spinal problems and treatment by Dr. Courtney, which began in 1997. Dr. Wharton described the March 2012 surgery as "lumbar spine surgery" and "a 2 level lumbar interbody instrumentation with Eminent Peek cages . . . performed at L3-4 and L4-5." His supplemental

report stated that during the 2015 surgery, Dr. Courtney implanted pedicle screws at several levels, and the report indicates that over two hours into the surgery Steven suffered a cardiac arrest and was declared dead.

Dr. Wharton opined about the standards of care for the 2012 surgery and several breaches of those standards. For example, Dr. Wharton opined that the standard of care required Dr. Courtney to offer Steven a simple decompression at L3-4 only, which would have, within reasonable medical probability, alleviated his symptoms. The decompression was a minimally invasive outpatient procedure with a higher likelihood of success. Also, Dr. Wharton determined that even if the standard of care supported the decision to place implants into the intervertebral disc spaces, Dr. Courtney failed to select implants appropriate for the condition of Steven's bone, which caused Steven to suffer an end plate fracture. According to Dr. Wharton, these and other named violations of the standards of care were a proximate cause of Steven's continued pain and suffering and his need for the July 2015 surgery. Dr. Wharton stated in his supplemental report, "In my opinion, within reasonable medical probability, Mr. Pennington would have avoided the need for the second surgical procedure on 07/22/2015 if Dr. Courtney had not performed a needless procedure and had . . . [done] a simple decompression."

Pennington also served a report from Dr. Entman, a board-certified cardiologist. Dr. Entman reviewed Steven's medical records for the decade before his death, as well as the autopsy report. Dr. Entman stated that Steven was a fifty-seven-year-old man with several health issues, including diabetes and reactive lung disease, that were "uncommonly well managed." The doctor noted that Steven had a normal stress test in 2005 and had several evaluations of cardiac function thereafter which were basically normal. Physical examinations were done frequently during follow-ups without any obvious abnormalities. In discussing Steven's cardiovascular disease risk factors, Dr. Entman observed that Steven had very little additional

risk of heart disease from his diabetes diagnosis. Steven's post-mortem examination showed that he had a larger-than-normal heart, which apparently worked well, and one 60% lesion in his coronary arteries, which was unlikely to be picked up in an exercise test.

According to Dr. Entman, the data suggested that a coronary event or coronary death would have been very unlikely. Nothing in Steven's health history or post-mortem examination suggested emergent cardiovascular or pulmonary death had the surgery in 2015 not occurred. Dr. Entman stated that, in all reasonable medical probability, Steven would still be alive had the 2015 surgery not occurred. Dr. Entman further stated he read Dr. Wharton's report which stated that negligence in the patient's care led to his 2015 surgery. Dr. Entman opined that the negligence and breaches set out in Dr. Wharton's report would more than likely be the proximal cause of Steven's death.

To satisfy the requirements of Chapter 74, an expert must explain, based on facts set out in the report, how and why a health care provider's breach caused the injury. *Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, No. 15-0909, 2017 WL 2492003, at *4 (Tex. June 9, 2017). An expert report must make a good-faith effort to explain how proximate cause is going to be proven. *Id.* Proximate cause has two components: (1) foreseeability and (2) cause-in-fact. *Id.* For a negligent act or omission to have been a cause-in-fact of the harm, the act or omission must have been a substantial factor in bringing about the harm, and absent the act or omission – i.e., but for the act or omission – the harm would not have occurred. *Id.* This is the causal relationship between the breach and injury that an expert report must explain to satisfy Chapter 74. *Id.* at *5. An expert's simple *ipse dixit* — an assertion without proof — is insufficient to establish a matter; rather the expert must explain the basis of his statements to link his conclusions to the facts. *Id.* at *4; *Hendricks v. Perales*, No. 05-16-01258-CV, 2017 WL 1075637, at *6 (Tex. App.—Dallas Mar. 21, 2017, no pet.) (mem. op.). Statements based on

reasonable medical probability, without explanation and without tying conclusions to facts, are not sufficient. *Hendricks*, 2017 WL 1075637, at \*6.

Although Pennington has not alleged any negligence in connection with the second surgery, if her husband's cardiac arrest did not result from that surgery, there can be no causal link between the 2012 negligence and his death. Pennington's expert reports were deficient on causation because there is nothing in them to show why her husband suffered cardiac arrest and died during the 2015 surgery. Dr. Wharton's report addressed the alleged negligence during the first surgery, which he asserted made the second surgery necessary. Dr. Wharton noted that Steven suffered cardiac arrest during the second surgery. Dr. Entman does not describe the cause of death in his report or use the term "cardiac arrest." Dr. Entman's report gave his opinion that "[i]n all reasonable medical probability, Mr. Pennington would still be alive had the surgery in 2015 not occurred." His report also indicates that the negligence and breaches of the standard of care set out in Wharton's report would be "more likely than not," the proximal cause of death. But Dr. Entman provided no factual support for his conclusion that Steven would still be alive but for the second surgery. Although the doctor explained his opinion that nothing in Steven's medical records made a coronary event likely, that is not the same as showing that the cardiac arrest was brought on by the 2015 surgery. There is simply nothing in either expert's report to explain how or if the cardiac arrest was linked to the 2015 surgery. Without such explanation, there is no showing of a causal link between the alleged negligence in the first surgery and Steven's death. The cases Pennington relies on are distinguishable. *See, e.g.*, *Kelly v. Rendon*, 255 S.W.3d 665, 671 & 678 n.10 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (although like this case, *Kelly* involves two surgeries, the procedures were days apart and cause of death was directly related to first surgery — complications from necrotizing fasciitis, or infection of wound from first surgery). Under the facts of this case, the trial court abused its

discretion in overruling Dr. Courtney's objections to the expert reports.  We sustain that part of Dr. Courtney's sole issue in which he complains of the court's error in overruling his objections.

Dr. Courtney also asserts that we should dismiss Pennington's wrongful death claim with prejudice and remand for a determination of the doctor's attorney's fees and costs.  But Chapter 74 allows the trial court to grant one thirty-day extension to cure a deficiency in an expert report, and a court must grant an extension if the report's deficiencies are curable. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c); *Columbia Valley Healthcare*, 2017 WL 2492003, at *5; *see Scoresby v. Santillan*, 346 S.W.3d 546, 556–57 (Tex. 2011).  In her response to Dr. Courtney's objections to the reports, Pennington requested the opportunity to cure any deficiencies.  The reports at issue are not so deficient as to constitute no report at all, and Pennington is entitled to an opportunity to cure the deficiencies.  *See Hendricks*, 2017 WL 1075637, at *7.  We therefore reverse and remand to the trial court to consider granting a thirty-day extension of time to allow Pennington to attempt to cure the deficiencies in the experts' reports regarding causation.

/Ada Brown/
ADA BROWN
JUSTICE

161124F.P05

–7–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

STEPHEN COURTNEY, M.D. AND
PLANO ORTHOPEDICS SPORTS
MEDICINE AND SPINE CENTER, P.A.,
Appellants

No. 05-16-01124-CV     V.

CHRISTEL PENNINGTON,
INDIVIDUALLY AND AS AN HEIR AND
REPRESENTATIVE OF THE ESTATE OF
STEVEN PAUL PENNINGTON,
DECEASED, Appellee

On Appeal from the 162nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-16-03386.
Opinion delivered by Justice Brown, Justices
Francis and Schenck participating.

In accordance with this Court's opinion of this date, the trial court's November 4, 2016 order is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellants STEPHEN COURTNEY, M.D. AND PLANO ORTHOPEDICS SPORTS MEDICINE AND SPINE CENTER, P.A. recover their costs of this appeal from appellee CHRISTEL PENNINGTON, INDIVIDUALLY AND AS AN HEIR AND REPRESENTATIVE OF THE ESTATE OF STEVEN PAUL PENNINGTON, DECEASED.

Judgment entered this 21st day of July, 2017.